Robert Farris-Olsen
Scott Peterson
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
401 N Last Chance Gulch
P.O. Box 557
Helena, MT  59601
(406) 442-3261 Phone
(406) 443-7294 Fax
rfolsen@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| ROBERTA PICKETT and CHRIS FORSMAN,<br><br>Plaintiff,<br><br>v.<br><br>MOUNTAIN WEST FEDERAL CREDIT UNION; HEALTH FORMULA, INC.; and JOHN DOES 1-10,<br><br>Defendants, | Cause No: CV-21-61-BU-BMM-JTJ<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now, Roberta Pickett and Chris Forsman, and for their complaint against Mountain West Federal Union ("Mountain West"), Health Formula, Inc., ("Health Formula"), and John Does 1-10, states and alleges as follows:

## PARTIES

1.     Roberta Pickett and Chris Forsman are residents of Butte, Silver Bow County, Montana.

2. Mountain West is a Federal Credit Union with branches in Butte and Libby, Montana.

3. Health Formula, Inc., is a foreign corporation with its principal address in Hollywood Florida.

4. John Does 1-10 are individuals or entities whose identities are not yet know, but who may be liable for the injuries suffered by the plaintiffs.

## JURISDICTION AND VENUE

5. The claims in this matter are based on violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq. Jurisdiction is, therefore, appropriate under 28 U.S.C. § 1331.

6. Venue is appropriate pursuant to Local Rule 3.2(b) and § 25-2-124, MCA.

## FACTS SPECIFIC TO INDIVIDUAL CLAIMS AGAINST MOUNTAIN WEST

7. Pickett and Forsman reside in Butte, Montana, and at all times relevant to the complaint, had financial accounts at Mountain West, including a checking a savings account.

8. Pickett also had a debit card through Mountain West. The debit card was, and is, advertised as having fraud protection.

9. Pursuant to the debit card agreement, Pickett would not be responsible for any fraudulent "Visa transaction."

10. The agreement further explained that under the EFTA, if Mountain West were

notified of a non-Visa transaction within two days of Pickett identifying the fraudulent transaction, she would not be responsible for more than $50 of the fraudulent charge. And, if she notified them within 60 days, she would not be responsible for more than $500.

11.     The debit card agreement also explained that the card could not be used more than ten times in a day.

12.     The agreement also explained that if she initiated more than six transfers between her accounts in a day, then she could be charged a transfer fee in accordance with an attached fee disclosure sheet.

13.     The relevant fee schedule, though, does not disclose any fee for transfers exceeding six per day.

14.     The disclosure does not state that a transfer from saving to checking that is initiated by Mountain West costs $5.00 per transfer.

15.     Prior to May 2020, Pickett regularly used her debit card for online transactions, including at Apple.com and Amazon.com. But most, if not all, of the transactions took place in Montana or online.

16.     However, on or about May 13, 2020, Pickett's Visa debit card was used at Chanello's Pizza in North Carolina for $54.22. This transaction was not initiated by Pickett or Forsman.

17.     The May 13, 2020, charge to Chanello's was fraudulent.

18.     Following the May 13, 2020, transaction, additional fraudulent charges began

appearing on Pickett's account. Most of them were associated with Apple.com or Amazon.com.

19.     On some days, like May 19, 2020, more than ten payments occurred using the debit card.

20.     On or about June 30, 2020, there were approximately 15 debit card transactions: 14 from Amazon.com, and one with Apple.com.

21.     This trend continued through June, July, August, September, and October 2020.

22.     During that same timeframe, Mountain West also charged Pickett and Forsman significant "Share Transfer Fees." For example, on or about April 1, 2020, Mountain West charged Pickett and Forsman $7.00 when they transferred $13.14 from their savings account into their checking account. At the time, the balance was $484.17, so the "Share Transfer Fee" was not related to any potential overdraft, and the fee was not disclosed on any fee schedule.

23.     Mountain West charged $7.00 for a $9.99 transfer on or about April 1, 2020. Pickett and Forsman initiated the April 2, 2020 transfer, and the account balance was $462.31, so there was no threat of an overdraft.

24.     Mountain West charged fees transfers initiated by Pickett and Forsman in the following amounts per month: April 2020 - $21.00; May 2020 - $49.00; June - $168.00; July 2020 - $126.00; August 2020 - $322; September 2020 - $161.00; October 2020 - $84.00.

25.     Some of these transfer fees occurred on the same day, for example, on or about

June 15, 2020, charge five (5) $7.00 "Share Transfer Fees"; and on or about July 26, 2020, Mountain West charged seven (7) $7.00 "Share Transfer Fees".

26. In all, from April to October 2020, Pickett and Forsman were charged, and paid, approximately $931.00 in "Share Transfer Fees".

27. While Pickett and Forsman were being charged these fees, the fraudulent transactions continued to occur. Pickett scrutinizing her bank statements and observed that her bank accounts were draining faster than normal, with significant charges on Apple and Amazon, so she advised her family to limit their spending.

28. By September, the drawdowns had not stopped, so Pickett started evaluating all of the transactions from May and looking at all transactions going forward. As she researched her accounts, she learned for the first time of numerous fraudulent transactions, including, but not limited to, charges from CSA-GGA Damage Insurance, mypuritynow.com, demandyoursnow.com, spoofcard-cc.com, dr-exprt.com, spoofapp.com; and Spokeo.

29. In addition to these unique charges, there were also multiple fraudulent charges from Apple.com and Amazon.com

30. The total of the fraudulent transfers was more than $500, and all the fraudulent transfers were completed with Pickett's debit card information.

31. After learning about the fraudulent transfers, Pickett and Forsman notified Mountain West and requested a refund. Mountain West refused to refund the fraudulent amounts and asserted that because Pickett and Forsman had charges from

Apple.com dating back to 2017, the credit union would not refund any amounts.

32. Pickett and Forsman then requested that the debit card be canceled or shut off.

33. On or about October 18, 2020, Pickett's debit card was canceled or shut off. However, the fraudulent transactions did not stop.

34. On or about October 22, 2020, the card was charged $98.15; on or about October 23, 2020, it was charged multiple times on Apple.com; and, at the latest, on or about October 29, 2020, a $19.99 payment was processed on Amazon.com.

35. In total, after the card was supposedly cancelled, approximately $500 was charged to the card and taken from Pickett and Forsman's account. This amount was not refunded.

36. In attempting resolve the issues, the only investigation that Mountain West undertook was to confirm that Pickett had, in fact, made purchases on Apple.com prior to the fraudulent charges started occurring.

37. In its investigation, Mountain West did not, for example, contact Apple.com, Amazon.com or any other entity to obtain copies of sales receipts or purchase orders. Its investigation only included looking at past transfers and noting that some were from Apple.com, so concluded that the alleged unauthorized transfers were, in fact, "authorized."

## FACTS SPECIFIC TO INDIVIDUAL CLAIMS AGAINST HEALTH FORUMULA, INC.

38. In addition to the issues with Mountain West, Pickett and Forsman also were

harmed by Health Formula Inc.'s action.

39. Unbeknownst to Pickett and Forsman, and while they were sorting out their issues with Mountain West, Health Formula, Inc., was subject to a data breach, and Pickett's debit card information was taken.

40. On or about October 29, 2020, Health Formula, Inc., sent Ms. Pickett a letter notifying her of the data breach.

41. The notice explained that on June 5, 2020, Health Formula learned that payment card information had been acquired without authorization.

42. In reality, the data breach occurred on or about April 24, 2020, and lasted until June 7, 2020.

43. Subsequent to the data breach, Health Formula, Inc. investigated, and engaged a digital forensics firm to assist. The investigation confirmed that payment card information had been accessed, including Pickett's.

44. In fact, the letter stated that Pickett's information was disclosed. Her name, email address, billing address, and payment card information was disclosed. The payment card was the same as her debit card from Mountain West.

45. The letter further indicated that its website security was enhanced after the data breach. In other words, its website security – where the breach occurred – was not sufficient to protect Pickett's information.

46. Despite knowing on August 20, 2020, that Pickett's information had been disclosed, Health Formula, Inc. waited for more than two months to notify Pickett for

7

the breach.

47. During that two-plus months, Pickett's debit card was regularly used on Apple.com, Amazon.com, and other websites, to purchase products without her authority. Had Pickett been notified earlier, she could have taken action to stop the use of her debit card.

48. Also as a result of the data breach, Pickett's social media login information, Amazon.com information, Apple.com information, and other website information, has been accessed, and she received a barrage of text or messages each day advising her that someone is trying access her accounts.

49. She changed her passwords for the various websites but continued to get notifications that someone is trying to access her accounts.

## PICKETT'S DAMAGES

50. As a result of the actions of the various defendants, Pickett and Forsman had approximately $30,000 wrongfully taken from her account that has yet to be reimbursed.

51. Pickett and Forsman also paid nearly $1,000 in wrongful share transfer fees.

52. Pickett additionally suffered significant emotional distress, and lost time in attempting to resolve the unauthorized transfers.

## CLAIMS AGAINST MOUNTAIN WEST
## COUNT I – ELECTRONIC FUNDS TRANSFER ACT

53. The preceding paragraphs are realleged as though stated in full herein.

54. Pickett and Forsman are "consumers" as they are natural persons.

55. Mountain West is a "financial institution" under 15 U.S.C. § 1693a(9) as it is a federal credit union.

56. Mountain West violated the EFTA by failing to reimburse Pickett and Forsman for unauthorized electronic funds transfers to various entities, including but not limited to, Apple.com, Amazon.com, CSA-GGA Damage Insurance, mypuritynow.com, demandyoursnow.com, spoofcard-cc.com, dr-exprt.com, spoofapp.com and Spokeo.

57. Mountain West further violated the EFTA by failing to investigate the errors regarding the unauthorized transactions in good faith, failing to recredit the accounts, failing to provide written explanation for refusing to correct the error, and failing to note Pickett and Forsman's right to request the documents it relied on in making its determination.

58. Mountain West also violated the EFTA by failing to stop electronic payments after on or about October 18, 2020, when Pickett instructed it to stop payment.

59. As a result of Mountain West's violations of the EFTA, Pickett and Forsman were injured. Those injuries included, but are not limited to: unauthorized transfers not recredited, charges allowed after the card was canceled, and emotional distress, mental anguish and loss of quality of life.

60. Pickett and Forsman are also entitled to statutory damages of not less than $100 or more than $1,000, treble damages for willful violations concerning error resolutions, and attorney fees and costs.

## COUNT II – MONTANA CONSUMER PROTECTION ACT

61. The preceding paragraphs are realleged as though set forth in full hereunder.

62. Pickett and Forsman are "consumers" under the Montana Consumer Protection Act (MCPA).

63. Mountain West is engaged in a "trade or commerce", including by being a financial institution with financial accounts owned by Pickett and Forsman.

64. Mountain West engaged in unfair and/or deceptive acts or practices in violation of § 30-14-103, MCA.

65. Those unfair and/or deceptive acts or practices include:

   a. Mountain West violated the EFTA by failing to reimburse Pickett and Forsman for unauthorized electronic funds transfers to various entities, including but not limited to, Apple.com, Amazon.com, CSA-GGA Damage Insurance, mypuritynow.com, demandyoursnow.com, spoofcard-cc.com, dr-exprt.com, spoofapp.com and Spokeo.

   b. Mountain West further violated the EFTA by failing to investigate the errors regarding the unauthorized transactions in good faith, failing to recredit the accounts, failing to provide written explanation for refusing to correct the error, and failing to note Pickett and Forsman's right to request the documents it relied on in making its determination.

   c. Mountain West also violated the EFTA by failing to stop electronic payments after on or about October 18, 2020, when Pickett instructed it to stop

payment.

d. Charging, and failing to disclose, "Share Transfer Fees".

e. Representing that the debit card came with fraud protection, when in fact none-existed.

f. Failing to credit the account of Pickett and Forsman all but $50 of the of the unauthorized transactions in violation of § 32-6-303, MCA.

g. Failing to investigate the matter and failing to correct the unauthorized transactions in violation of § 32-6-302, MCA.

66. As a result of Mountain West's actions, Pickett and Forsman suffered an ascertainable loss of money or property, in that they paid more than $900 in undisclosed and unpermitted "Share Transfer Fees" and approximately $30,000 in unauthorized electronic funds transfers.

67. Picket and Forsman were damaged by these charges.

68. Mountain West is, therefore, liable for violating the MCPA, and Pickett and Forsman are entitled to recover their actual damages, including emotional distress, treble damages and attorney fees.

## COUNT III – BREACH OF CONTRACT

69. The preceding paragraphs are realleged as though set forth in full hereunder.

70. Pickett and Forsman had a contract with Mountain West regarding their debit card, and their accounts.

71. Mountain West breached these contracts by failing to reimburse the

11

unauthorized transfers and charging Share Transfer Fees.

72. As a result of these breaches, Pickett and Forsman were injured.

73. Mountain West is, therefore, liable for its breach of contract.

## CLAIMS AGAINST HEALTH FORMULA, INC.
## COUNT IV – MONTANA CONSUMER PROTECTION ACT

74. The preceding paragraphs are set forth in full hereunder.

75. Pickett and Forsman are "consumers" under the MCPA.

76. Health Formula, Inc. engaged in trade or commerce by directly or indirectly advertising, offering, and selling goods or services to Montanans.

77. Health Formula, Inc. violated the MCPA by engaging in unfair and/or deceptive acts or practices, including:

   a. Failing to implement and maintain reasonable security and privacy measure to protect Pickett and Forsman's personal information.

   b. Failing to notify Pickett and Forsman that their security was not sufficient to protect their personal private information.

   c. Failing to provide notice to Pickett and Forsman without unreasonable delay, in violation of § 30-14-1704, MCA.

78. As a result of the Health Formula, Inc.'s violations of the MCPA, Pickett and Forsman suffered an ascertainable loss of money or property, including, but not limited to, the funds taken via unauthorized transfer from their Mountain West account.

79. Health Formula, Inc.'s violations of the MCPA cause Pickett and Forsman's

injuries.

80. Health Formula, Inc. is, therefore, liable for its violations of the MCPA, including for actual damages, treble damages and attorney fees.

## COUNT V – NEGLIGENCE

81. The preceding paragraphs are realleged as though set forth in full hereunder.

82. Health Formula, Inc. owed Pickett and Forsman a duty to exercise reasonable care in obtaining, retaining ,securing, safeguarding, deleting and protecting their personal information in its possession from being compromised, lost stolen, accessed and used by unauthorized persons.

83. Health Formula, Inc. breached this duty.

84. Health Formula, Inc.'s breach caused Pickett and Forsman's damages.

85. As a result, Health Formula, Inc. is liable for its negligence.

WHEREFORE, Pickett and Forsman request that the court or jury award the following relief:

1. That they be awarded their actual or compensatory damages;

2. That they be awarded statutory damages under the EFTA and/or MCPA;

3. That they be awarded treble damages pursuant to the EFTA and/or MCPA;

4. That they be awarded their attorney fees pursuant to the EFTA and/or MCPA;

5. That they be awarded punitive damages; and

6. Such other and further relief, including injunctive relief, as may be necessary to effectuate the Court's judgment or as the Court otherwise deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to F. R. Civ. P. 38, Pickett and Forsman hereby demand a trial by jury.

Dated this 13TH day of August 2021.

        MORRISON SHERWOOD WILSON DEOLA, PLLP

        By:    /s/ Robert Farris-Olsen
                  Robert Farris-Olsen
                  *Attorney for Plaintiffs*